Good morning, Your Honor, and may it please the Court. My name is Corey Catagnani. I represent Defendant Appellant Stanley Industrial & Automotive, LLC, doing business as MacTools. Appellant requests one minute for rebuttal. In 2018, FLM Enterprises, LLC, a company formed by Appellee Streedharan, entered into a franchise agreement with MacTools. The following facts are not in dispute. Appellee received a copy of the franchise agreement on or about June 28, 2018. The franchise agreement contained an arbitration agreement. Appellee had six weeks to review the agreement. At no time during those six weeks did Appellee attempt to negotiate a single term of the agreement. Appellee proposed no changes, and there is no evidence MacTools rejected any proposed changes. Appellee signed the agreement on behalf of the company on August 21, 2018. Upon signing the agreement, Appellee made the following representations and acknowledgments, that he received the franchise agreement and all other related agreements, that he read and understood them, that he had time to review them, that he had the opportunity to ask questions and consult with legal or other advisors about the agreement. Pardon me, Counsel. As I remember the district court, the district court, I think on page 26, said that there had been declarations filed by the, by Mr. Streeteran, if I pronounced that correctly, saying that he had no opportunity to negotiate, and there were no counter declarations filed by your client saying they had an opportunity to negotiate. Based on that, the district court found, as a matter of fact, that there was no opportunity to negotiate. We review for a clear error. What's wrong with that? Two things, Your Honor. First of all, it's not a fact. It is a conclusion that's made by Mr. Streeteran that he did not have an opportunity. The opportunity to negotiate is not a factual issue? His conclusion, I believe, in his declaration, Your Honor, was that. It's a conclusion. No question about it. Did you object and move to strike the declaration on the basis that it was a conclusion and wasn't a statement in evidence? We did not move to strike. It's in evidence. All right. Based on that record, why do you say that there is evidence in the record of an opportunity to negotiate so clear that we have to reverse a finding by the district court judge that there was no opportunity to negotiate? Well, two reasons. Again, Your Honor, we maintain that that is not a fact, that it's a conclusion and therefore not deferential. That said, Your Honor. If I say I like steak, right, that's a conclusion that I like steak. But it's also a fact that I eat steak. Yes, Your Honor. And to your point, though, I believe what Appelli is arguing here is a brand-new standard applicable to determining procedural accountability. Explain to me where the error is in the district court finding that there was no opportunity to negotiate. In the facts that I just recited, Your Honor, which was that essentially what Appelli is arguing is that by not proposing an opportunity or not presenting a change, that that in and of itself can represent a take-it-or-leave-it contract. So under Appelli's new standard, which apparently the district court adopted, the only thing is signatory to an arbitration agreement would have to do is say there was no opportunity to negotiate. But under the facts of the case, that's just simply not true. There were six weeks from the time that — There were six weeks to negotiate. Is there any declaration by your client saying, we sent him the form contract and asked him whether he had any changes that he wished to make? Well, there's not a declaration in the record, Your Honor, but there is evidence that he to review and consult with an attorney of his choice if he chose. The fact that he did not present additional evidence indicating that he affirmatively approached MacTools with a term by — If he went and got an attorney who told him, listen, pal, you've got nothing to negotiate here under this agreement, how is that a fact that there was an opportunity to negotiate? Did your client ever say to the Appelli, do you want to negotiate? It's not in the record, Your Honor. Can I ask you this? I'm taking all that my colleague has said into account, which may indeed carry the day, but is it not correct that the record does show that the document itself that the Appelli signed said he had six weeks to negotiate, right, and advising to consult an attorney? The agreement gave at least 14 days, two weeks, and advised to consult with an attorney. So that is part of the record. Correct. Is there anything in there in the record that indicates the level of sophistication and education and so on of the Appelli? Appelli has submitted a declaration indicating that he has an associate's degree and that I think that's the extent of the level of sophistication here. Again, he claims that he's, you know, entering into a contract with a publicly traded company. But again, those are not — First of all, what the court found, what the district court found, was that this was a contract of adhesion, not that there were other procedurally unconscionable issues here. But putting that aside and dealing with the issue that my colleague has raised, how do we deal with this? Apparently, there was no — nothing on the record that indicates that you said you could have an opportunity to negotiate other than what we just talked about. There's nothing in there where you said to him, did you want to negotiate? Or he contacted you, said he wanted to negotiate. So the district court found that that was inadequate. Are we to take the documents themselves that say he had a certain period of time to negotiate, that advise him to consult an attorney and, if you will, counter away those? Is that what we do in terms of that aspect of the case? Well, Appellant does submit that the documents and, again, the acknowledgments by Mr. Streetheron that he had that time to review and acknowledge the agreement and consult are evidence. The other issue here, Your Honor, is that the non-moving party, here, Appellee Streetheron, had the burden to prove both procedural and substantive unconscionability. And so, therefore, the lack of evidence in there is weighed against Appellee because that was his burden to come forward with affirmative evidence to demonstrate. Let's just say, arguendo, that the court agrees this is not a contract of adhesion under California law. So then what happens in light of what my colleague has pointed out? It's very simple, Your Honor. The contract is submitted or the case is submitted to arbitration because there has to be both procedural and substantive unconscionability. And the issue of whether there was an opportunity to negotiate would also go to the arbitrator? Well, not at this point, Your Honor. I mean, at this point, Appellee had argued that. The issue about that would go to the arbitrator would be all... Well, that's not true, Your Honor. All cases or all controversies arising out of the agreement, including the agreement itself, are subject to the arbitration. So that's what would go to the arbitrator. What did he say about... He said he didn't believe that it was negotiable in his declaration? Or did he say that he was told that he couldn't negotiate? Or what did he say in his declaration about negotiating? He made a very conclusory statement that it was a take-it-or-leave-it contract. And that's it. So I guess you'd take from that that his view was he couldn't negotiate it. That's correct. That was his speculation. But there was no... Again, the facts conjured it. I guess to go into Judge Feah's questions, I guess the question would be, what do you do with a record that has one party's assertion that I believe that I couldn't negotiate and there's nothing else from the other party? Does that definitively mean that you couldn't negotiate? I don't know. What is your view on that? Again, Your Honor, I believe our view would be that because they have the affirmative duty to establish procedural unconscionability, his belief, unfounded, without any evidence to the contrary, would be insufficient to meet... What would he need to show? He would have to make some affirmative showing, for instance, that there was language in the contract that said take-it-or-leave-it, this is non-negotiable, accept this, or... That he asked. I see my time is running low here, Your Honor. We could continue to answer his questions. That he asked. Maybe that if he said, I asked, and they said no. Correct, Your Honor. Something to indicate. First of all, even if we had language in the contract that indicated, if you don't accept this, you cannot... Just to be super clear, your position is that his mere assertion that I believed that this was a take-it-or-leave-it and that I couldn't negotiate is not enough to meet his burden. That's basically your legal position. That's correct, Your Honor. Very well. I'll look to the other side. Thank you. Mr. Markley, right? Yes. Good morning, Your Honors. Sean Markley on behalf of plaintiff below and respondent here on appeal, Vijayan Sreedharan. I will start by addressing procedural unconscionability, which is what we were just discussing here as an initial matter. I agree that this would need to show clear error. Back up a little bit, please. Yes, that this would need to show clear error here on appeal, given this was an exercise by the lower court to review the record, weigh extrinsic evidence, and make her conclusions. So that would need to be shown to be... Let's just arguendo. If the court were to conclude that this is not a contract that's unconscionable under California law, it just isn't, what does that do to this case in light of what's been said in terms of what your client stated, what they refused, how they didn't respond? What happens to the case in that circumstance? Well, Your Honor, I believe that this court can affirm on any ground that was put forth at the lower court. I think we have a very solid mutual assent argument under the Winter case as well. We've also made a waiver argument. So those two arguments would need to be addressed. In addition to the unconscionability argument, all three of those are independently fatal to the attempt to compel arbitration here. So you mean that this is unconscionable? Yes, Your Honor. So we need procedural and substantive. So we were discussing procedural here. And I'll point out that this case very much mirrors the Lim versus T-Force Logistics case. In both cases, you have unequal bargaining power as a starting point. And then you have a preprinted form agreement. There's a couple blanks for your name and your date and other things like that. But this is a standardized contract. But with respect, counsel, as you know, there are thousands of these kinds of agreements that are looked at by people all the time. Most of them don't contain language that says you've got a certain number of period of time to consult an attorney. You've got a smart client, you've got some education. How does that become unconscionable? They told him, consult a lawyer. You know, you've got a certain period of time to respond. He didn't do that. Why is that the fault of, in this case, the appellant? Sure, Your Honor. So with respect to consulting an attorney, that's one small factor that courts look at within the broader procedural unconscionability framework. And the question really is, did you consult one? You know, I think expecting an hourly wage worker who was formerly working at Lowe's, you know, to go out and retain counsel and spend money to review agreement is somewhat unrealistic. He's going to enter into a serious franchise agreement. He is going to spend some money, whether it's unconscionable or not. Doesn't it make perfect sense that he would be given an opportunity to consult with a lawyer if he doesn't do that? That's, isn't that his fault? It's his decision to consult with an attorney. Again, I don't know of any case that says failing, being advised you can consult with an attorney and failing to do so means no procedural unconscionability. And to the last point that was made regarding asking to negotiate or what kind of evidence you would need to show in that context, did you actually try? Did you, you know, send an email proposing changes? The Otto versus Coe case by the California Supreme Court directly addresses this. And it says in the context of a standardized form, pre-printed contract, you don't need to go show that you tried to negotiate it. This is our common sense understanding of these things. You either accept them or you don't. And that goes to, again, to bargaining power, sophistication. That kind of makes some sense to me to my cable, to my cable, you know, to my cable conduct. I never kind of assumed that I can negotiate my credit card agreement or my cable contract. But this does feel a little bit different. This is, you know, this is a franchise agreement. It's not, I'm actually sitting here, I'm not so sure what they would do if he proposed to change. It does seem a little different, doesn't it? It's different than a consumer case that where you are literally checking a box. I agree with you there. But again, and this is an employment case. We're alleging this is an employment relationship in either a franchising or employment relationship. There's a clear power imbalance, and that's what this court has repeatedly recognized. So what would they need? I guess this kind of goes to, and it's sort of piggybacking on Judge Smith's question, but what would they need to do in order, do you think, to show that this was not procedurally unconscionable under your, like, give me an example of what they would need. Have big bold letters. Please ask us to negotiate this contract. Yes, I think a good example. There was a period of time where there was some influx questions going to the Supreme Court about whether you could opt out of arbitration or not. So many of these contracts would say something, for example, like, email us within 30 days of signing this agreement if you want to opt out of arbitration. Is that the only? So I see your point. You're saying if you gave them an opportunity to opt out, then, you know, presumably now you have a choice. Is that the only way? So you can't have an agreement that requires binding arbitration? Is that your position? Or it's procedurally unconscionable? In this context of an employment or franchising setting where there's this power imbalance, sending someone a form contract that has a few blanks to fill in is presumptively non-negotiable. And I think that's what the auto versus co-court says. But it's not a question of presumptively not negotiable. You've got the burden of proof of showing that it was not negotiable. What evidence is there in the record other than the conclusory declaration of your client that there was no negotiation possible? Yes, I think we look at the broader context here, Your Honor. And so we look at, for example, the franchise disclosure document has the franchise agreement and a series of other agreements all attached to them. These aren't an editable word format. This is a standard contract that's presented in advance. And they say, here's the opportunity. If you want it, these are the documents you're going to sign. So that alone suggests it's very much not enforceable. And in the LIM case, you have a standard preprinted form agreement. You have a declaration by the plaintiff in that case, the same as my client, that says, my understanding of this is that it was non-negotiable. It was take it or leave it. If I wanted to work for them, I signed the agreement. No, it's interesting. I mean, basically, it's almost like you're asking us to apply equity here. But in California, as you know, franchise agreements, there's a whole law and all kinds of regulations that restrict what the franchisor can put in the agreement. Provides lots and lots of benefits and protections for the franchisee. You would agree with that, right? There are franchise laws that require disclosure documents. It's the things we make clear. They are really, really tough. And what, you know, when you say, oh, there's a contract of adhesion, and it's just so tough and one-sided. Yeah, I suppose that's true. But it's a highly regulated situation. And as my colleague points out, it's your burden to show that it's unconscionable. And both procedurally and substantively. And I'm struggling to find out, certainly substantively, where you have met your burden. What am I missing? Well, substantively, Your Honor, returning to that piece, yes, that as the lower court found, there is a clear one-sided limitation on your statute of limitations. This is where they say that all claims must be brought within one year, except for claims that go to max ability to collect money. Substantively unreasonable? Yes, employment claims in this state. The case that backs you up on that? Yeah, the De Leon case that we cite. I think that's what that stands for. That is truncating remedies available. I mean, Armendariz says that as well. That's, you know, 23 years ago, the California Supreme Court said, you can't make arbitration supposed to be an equivalent forum. You get the same rights and remedies and protections that you have in court. And when you try to make arbitration this watered down lesser forum, where you don't have the same rights and remedies, that is what is substantively unconscionable. So when you take a, what would otherwise be a four-year or three-year statute of limitations, and you truncate that to one, that is, for my client, that would be fatal to his claims if that was enforced in this case. Is that a procedural or a substantive issue? Substantive, Your Honor. What's your best argument that it's procedurally against the law? As the lower court found, Your Honor, in this power imbalance employment or franchising setting, we do need to keep in mind this is an employment lawsuit, and these are presumed to be employees until MacTools meets its burden to show otherwise. Per se rule that if the franchisor is more powerful than the franchisee, the franchisee or franchisor loses. Is that your position? It establishes some degree of procedural unconscionability, just like the lower court found. When you have this power imbalance coupled with a standardized form contract that leaves the signor with the firm impression that this was a take-it-or-leave-it, non-negotiable... You're basically saying that the franchise industry in California is dead. How can there possibly be an agreement that's not procedurally and substantively invalid under your analysis, given the criteria that you're stating? I need both procedural and substantive, and they could very easily avoid that. On the procedural grounds, you send it in a Word document, ask if anyone has changes, allow people to opt out of certain clauses or strike clauses, or to take options for selling things. Sitting in a Word document seems funny that the law would turn on whether it's a Word or PDF. But it does sound like... I asked you earlier, do you need to have language saying, please let us know if you want to have changes? You're basically saying that's what you think would be necessary in order to not have procedural changes. When you receive a PDF with a couple of blanks in it. In some ways, what you're basically saying is, it feels a little bit like you're shifting the burden, right? Because you're forcing them to ask you whether you want to have changes as opposed to you being able to show that it was not changed, which seems like the minimum. You'd want to say, why ask? And they said, no. Again, I'll direct, Your Honor, to the Otto versus Co. decision, which says in this context of a pre-printed standardized form with all the material terms filled in, you don't need to go ask or attempt to negotiate. Was that from consumer? Was that a consumer product? That was employment as well, Your Honor. Otto versus Co., yeah. It feels a little bit different. I mean, a franchise feels like it's something bigger and you're sort of making a bigger commitment. And it's not clear to me. You know, obviously you buy a car, you buy a lot of things and you know you can't reach out and ask them to change it. But franchise, it's not so clear to me that if you reached out and said, I have this one little thing I don't agree with. Can we change that? It's not clear. In other words, it's not obvious to me that they wouldn't be willing to change something. But you think it is. Right. I think when you get a form with three blanks in it, which is your name, the date, and your signature, that that is, you know, suggests very much that it's not negotiable. And that's exactly what my client's understanding was. He submitted evidence to the court. Mack did not come back with a counter declaration saying, people frequently negotiate these. I would have negotiated. There's no evidence of that. And this, I think we have the same exact evidence that the LIM versus T-Force Logistics decision carried, which was a standardized contract, subjective belief that this was non-negotiable, and no contrary evidence. If I heard you correctly, you're saying basically the franchise agreement is an employment agreement. Is that your position? Yes, Your Honor. There's no test for whether you're a franchisee.  They take out all the other things that employees have to do. Is that right? This is an independent contractor relationship. So we're alleging they were misclassified. Contractor agreement or is it employment contract? They're different, you know. They are. It says independent contractor in there, but that's, we dispute that. It's a ruse. Right. It's just like the FedEx case where they say... It doesn't mean anything. That's the merits of your whole case, is that if you were to get through your, you know, all these, the thresholds, you're saying you would, that he's an employee, and so he should have gotten overtime, et cetera. Exactly. That he would meet the California employment test. And because of that, again, there's a presumption of an employment relationship in California, and so that would follow from there. Okay. Thank you very much. Thank you, Your Honor. Do my colleagues have any questions? The other side, they've used their time up, but if we need to hear more, we can do that. Do either of you need some? All right. We thank you both for your argument. The case just argued is submitted, and we wish you a good day.
judges: BEA, SMITH, VANDYKE